IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kenneth DiBella,

    Plaintiff,

v.

Steve Carpenter,

    Defendant.

Case No. 2:10-cv-174

Judge Michael H. Watson

## OPINION AND ORDER

### I. Introduction

This matter is before the Court to consider a motion to remand (Doc. 5) this action to the Franklin County Court of Common Pleas, where it was initially filed by plaintiff Kenneth DiBella. The motion has been fully briefed. The Court does not believe that oral argument on the motion is necessary, and Mr. DiBella's request for oral argument is denied. For the following reasons, Mr. DiBella's motion to remand will also be denied.

### II. Background

This case arises out of a controversy between the parties over how money from the sale of assets of a corporation known as Engage Health LLC ("Engage") should be disbursed. According to the parties, and as evidenced by documents they have submitted in connection with the motion to remand, those assets were sold to another company, KePro Engage, LLC, for $219,319.98. Because the three owners of Engage could not agree on the appropriate distribution of this money, it was placed in escrow

with the law firm of Jones, Troyan, Pappas & Perkins, a Legal Professional Association. It will apparently remain in escrow until either the parties agree to a plan of distribution or a court orders one.

Mr. DiBella was the majority shareholder in Engage, owning 80% of its stock. Steve Carpenter, the only defendant named in the original complaint, owned 10% of the shares, as did a third individual, Tim Worosher. As the parties describe their dispute, it is fairly simple. Mr. DiBella contends that the money should be disbursed to the owners of the company in proportion to their respective stock ownership. As explained in more detail below, Mr. Worosher apparently agrees to either that or a distribution based on similar principles. However, Mr. Carpenter, who was also the Chief Executive Officer of Engage, thinks that creditors should be paid before stockholders. That action would apparently benefit him, because he claims to be owed $682,000 by Engage for salary which was never paid. Consequently, he would like all of the escrowed funds to be paid directly to himself.

Mr. Carpenter is a Texas resident, and he removed this case on the basis of diversity jurisdiction. See 28 U.S.C. §1332(a). In his original motion to remand, Mr. DiBella argued that the amount in controversy fell below the district court's $75,000 jurisdictional limit because, under his theory of the case, Mr. Carpenter had a claim to, at most, 10% of the money in escrow. After Mr. Carpenter pointed out, in response, that both he and Mr. DiBella were asserting claims to more than $75,000 of the escrowed funds, Mr. DiBella appears to have abandoned his amount in controversy argument. Instead, he filed an amended complaint naming Mr. Worosher and Engage, both Ohio citizens, as defendants. He now argues that remand is proper because the complete

diversity of citizenship required by §1332(a) no longer exists.

In light of the amended complaint, Mr. Carpenter filed a surreply contending that the addition of new defendants did not destroy diversity. Mr. Carpenter argues that Engage is a nominal party and that its citizenship may be disregarded for purposes of establishing diversity jurisdiction. Further, he asserts that Mr. Worosher must be realigned as a plaintiff. If that were to occur there would still be complete diversity, and remand would be improper.

### III. Analysis

Federal courts are not courts of general jurisdiction and may exercise the judicial power of the United States only as authorized by Article III of the Constitution and by jurisdictional statutes enacted by Congress. Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986). 28 U.S.C. §1441 permits cases to be removed from a state court if a federal court would have had original jurisdiction over the case had the complaint been filed in a federal court.

The two primary bases for asserting removal jurisdiction are diversity jurisdiction or federal question jurisdiction. The removal of a diversity case is proper if no party in interest properly joined and served as a defendant is a citizen of the State in which such action is brought, and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs...." 28 U.S.C. §1332 (a). The party seeking removal bears the burden of proving by a preponderance of the evidence that the jurisdictional requirements are met. Gafford v. General Electric Co., 997 F.2d 150, 158 (6th Cir. 1993). The appropriateness of federal jurisdiction in a diversity case is determined at the time of removal. Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939). However,

certain events—particularly the joinder of non-diverse parties after removal—can destroy the Court's jurisdiction and require that the case be remanded to state court. See ,e.g., Curry v. U.S. Bulk Transport, Inc., 462 F.3d 536 (6th Cir. 2006). The Court will decide Mr. DiBella's motion to remand with these standards in mind.

The two issues raised in this case by the filing of the amended complaint are whether Engage is merely a nominal party whose citizenship can be completely disregarded for jurisdictional purposes, and whether Mr. Worosher's interests are more in line with those of Mr. DiBella than of Mr. Carpenter. If so, he may properly be considered a plaintiff for jurisdictional purposes. The Court will examine each of these issues in turn.

## A. Defendant Engage Health LLC

This Court has described the difference between a nominal party and a real party in interest in this way:

> A real party in interest defendant is one who, by the substantive law, has the duty sought to be enforced or enjoined. In contrast to a real party in interest, a formal or nominal party is one who, in a genuine legal sense, has no interest in the result of the suit or no actual interest or control over the subject matter of the litigation.

Rose v. Giamatti, 721 F.Supp. 906, 913 (S.D. Ohio 1989) (internal quotation marks and citations omitted). When a party is found to be nominal, the Court should disregard its citizenship for jurisdictional purposes. Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 190 (1924); see also Maiden v. North American Stainless, L.P., 125 Fed. Appx. 1, 2004 WL 2889919 *2 (6th Cir. Dec. 15, 2004).

It appears, from reading the Escrow Agreement, that Engage exists at this time

primarily, if not exclusively, for the purpose of dealing with the money in the escrow account. The agreement recites that Engage agreed to sell "substantially all of its assets" to KePro. Under the escrow agreement, Engage retained some minor duties, including executing an escrow distribution letter if the parties could agree on one, and paying fees to the escrow agent. There does not appear to be any language in the agreement itself that contemplates the payment of any portion of the escrowed funds to Engage. Thus, the agreement does not appear to vest Engage, or what is left of it, with any real stake in the outcome of this case.

The amended complaint does not contain any claim, or any language, which would suggest that Engage is anything more than a nominal party. It seeks a declaratory judgment "to determine the respective interests of Plaintiff Kenneth DiBella, Defendant Tim Worosher, and Defendant Steve Carpenter in the proceeds of sale ...." Am. Compl. (Doc. 10) ¶7. The prayer for relief asks the Court "to establish the respective interests of Plaintiff Kenneth DiBella, Defendant Tim Worosher, and Defendant Steve Carpenter and to order the distribution of the proceeds of the sale of Defendant Engage Health LLC ...." Id. at 3. Nothing in the requested relief would adjudicate any claim or affect any legal interest of Engage itself.

Mr. DiBella's reply to the surreply is no more enlightening on this issue. His brief confirms the fact that the real controversy is among the three claimants to the escrow account. This is not a case where, for example, Engage agreed to, but did not, deposit the funds in escrow, so that the three owners would have a claim against the corporate entity for breach of a duty created by the Escrow Agreement. Rather, it appears that Engage has fully discharged all of its obligations to the three parties to this case that are

described in the Escrow Agreement, and no decision by the Court would impose any additional legal duties on Engage. Under these circumstances, Engage is clearly a nominal party for diversity jurisdiction purposes.

## B. Defendant Tim Worosher

Mr. Carpenter recognizes the recent addition of Mr. Worosher as a defendant would normally destroy complete diversity. However, Mr. Carpenter argues that, in this case, Mr. Worosher's interests, if any, are more aligned with Mr. DiBella so that he should properly be viewed as a plaintiff. Mr. Carpenter further argues that when the parties are properly aligned, complete diversity is not destroyed. In response, Mr. DiBella argues that Mr. Worosher's interests conflict with those of both Mr. DiBella and Mr. Carpenter, so that his joinder as a defendant is proper.

The Court has an obligation to realign parties in accordance with the primary dispute in controversy. U.S. Fidelity & Guar. v. Thomas Solvent Co., 955 F.2d 1085, 1089 (6th Cir. 1992). That is true even if "a different, legitimate dispute between the parties supports the original alignment." Id. In deciding how to align parties, the Court must look to the "principal purpose of the suit," Indianapolis v. Chase National Bank, 314 U.S. 63, 69-70 (1941), an inquiry which requires the Court "to look beyond the pleadings, and arrange the parties according to their sides in the dispute." Chase National Bank, 314 U.S. at 69. Thus, if the interests of a named defendant are more aligned with the plaintiff given the "primary purpose" of the suit, that party must be realigned. Thomas Solvent, 955 F.2d at 1089.

There is no question that the primary dispute identified in the amended complaint is the parties' disagreement about how the money from the sale of Engage's assets is to

be distributed. The amended complaint is not particularly helpful in determining the respective positions of the parties; rather, it alleges only that the escrow arrangement occurred because Mr. Carpenter objected to an unidentified proposed distribution of proceeds. Am. Compl. (Doc. 10) ¶ 4. However, other filings by the parties make clear that Mr. DiBella, at this point, wants the proceeds distributed to the three owners in proportion to their ownership interest, while Mr. Carpenter wants all of the proceeds distributed to him as a creditor. Mr. Worosher's answer, while brief, appears to take a position more in line with that of Mr. DiBella. He asserts an affirmative claim to "a 16% share of the proceeds of sale of Engage Health LLC." Clearly, that is a claim that distribution be made to him as an owner of Engage, and to that extent it is inconsistent with Mr. Carpenter's claim to the entire proceeds. Although it is not entirely clear how Mr. Worosher's claim squares with Mr. DiBella's view of the parties' proportionate ownership of Engage, so that there may well be, at the end of the day, some issue to resolve as between Mr. DiBella and Mr. Worosher, as to the "primary purpose" of the suit, they both take a position that is more at odds with Mr. Carpenter's position than it is with each other's. For this reason, the Court will realign Mr. Worosher as a plaintiff. Because, with this realignment, all plaintiffs are of diverse citizenship from the single remaining defendant, Mr. Carpenter, diversity jurisdiction was not destroyed by the addition of Mr. Worosher as a party. Because the Court continues to have jurisdiction over this case, there is no basis for remanding it to the Franklin County Court of Common Pleas, and the motion to remand will be denied.

## IV. Disposition

Based on the foregoing, the motion to remand (Doc. 5) is **DENIED**.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**